Morse v. Henlon.

---

No. 19,746.

M. P. MORSE, revived in the name of SAMANTHA MORSE, as Administratrix, etc., *Appellant,* v. B. A. HENLON et al. (GEORGE WADE et al., *Appellees).*

SYLLABUS BY THE COURT.

1. WILL—*Construction—Intent of Testator.* There is no occasion for employing rules for judicial construction of a will in search of the testator's intention where such intention is expressed clearly and unequivocally in the instrument.

2. SAME. The intention of the testator so expressed is not controlled nor defeated by the fact that the scrivener divided the words used to express the making of a gift by the testator to a beneficiary into three paragraphs instead of including all in a single paragraph.

3. SAME—*Will Created Life Estate in Wife of Testator.* Provisions of the will under consideration are held to clearly show that the intention of the testator was to give his wife a life estate instead of an absolute title in fee simple to certain real estate.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed March 11, 1916. Affirmed.

*W. F. Challis,* and *E. C. Brookens,* both of Westmoreland, for the appellant.

*E. M. Brunner,* of Wamego, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: In an action to quiet the title to certain lots in Fostoria the controlling consideration was the meaning and effect of a will executed by John Wade. The provisions of the will material to this consideration are:

"Item 1st. I give and devise to my beloved Wife the house and six lots, viz: No's 13, 14, 15, 16 and No's 1 and 2 on which we now reside situated in Fostoria, Pott. Co., Kansas, and all the household goods, furniture, provisions and all the improvements that may be made thereon at the time of my decease.

"Item 2nd. I give and devise to my beloved Wife one hundred acres of land situated in the county of Morris and State of Kansas, to-wit— The East ten sixteenth ($^{10}/_{16}$) of the Northeast quarter (N. E. 1-4) of Section seven (7), Township seventeen (17), Range six (6) East of the Sixth Principal Meridian, containing one hundred acres (100) more or less.

"Item 3rd. I give and devise to Melvina Wade, my beloved wife, all the above named property for her to have and to hold the use of the same to her for and during her natural life.

"Item 4. I give and devise to my daughter, Mrs. Julia Drew, the one hundred acres of land mentioned in the above Will, with all the improvements that may be made for her to have and to hold the use of the same to her for and during her natural life and to become in possession of the same after the decease of my beloved Wife, and at the decease of my Daughter, Mrs. Julia Drew, the above mentioned one hundred acres of land with all the improvements made thereon, I give and devise to Mrs. Julia Drew's children, to be equally divided among them, that is the children living at the time of the decease of their mother."

About three years after the execution of the will John Wade died, leaving as his surviving heirs, his widow Melvina Wade, a daughter Julia Drew, four sons and five grandchildren. The widow duly consented in writing to the provisions of the will. In a will executed by Melvina Wade shortly before her death she undertook to devise the real estate in suit to M. P. Morse, a son of hers by a former marriage. He brought this action claiming title to the real estate and asking to have his title quieted as against the defendants, the heirs of John Wade, deceased. After the action was begun the plaintiff died and the action was revived in the name of Samantha Morse as administratrix.

The plaintiff insists that under the first item of the will Mel-

Morse v. Henlon.

vina Wade was given an absolute estate in fee simple in the lots devised, and that the subsequent provision in which only a life estate was given to Melvina Wade was repugnant to the prior devise and therefore invalid. It is a well-recognized rule that where a will in clear and express terms gives a fee simple title to land with the full power of disposition it can not be diminished by any general or doubtful expressions in the later clauses of the instrument. The primary consideration in the interpretation of a will is the intention of the testator, and if it can be ascertained, that intention must govern if it is not contrary to a settled rule of positive law or in violation of public policy. The intention is to be gathered from all parts of the will as well as the circumstances surrounding the testator at the time of its execution. When all the provisions of the instrument in question are read and considered together the intention of the testator was manifestly to give his wife a life interest in the real estate devised. It is so obvious that a resort to rules of interpretation is hardly warranted. Because the scrivener divided that portion of the will which expressed the gift of the testator to his wife into three sentences or paragraphs, it is contended that they are not so connected as to express a common purpose and that the later expressions are repugnant to the earlier ones. While the scrivener employed three sentences or paragraphs in stating the extent and nature of the gift to the wife of the testator, he might have included all in one with the same effect. He might have written that the testator gave the lots, improvements and personal property as well as the farm in Morris county to the wife of the testator to have and to hold the same "for and during her natural life." The purpose of the testator would hardly have been more apparent in such a recital than in the form in which it was expressed. The intention of the testator was not obscured by the fact that the scrivener broke the statement of the gift to the wife into three parts. These parts were so related to each other and were so obviously united in the expression of a common purpose that they must be read and given the same meaning as if all had been embraced in a single sentence or clause of the will.

26—97 KAN.

In *Williams v. McKinney,* 34 Kan. 514, 9 Pac. 265, it was said:

"We are not to determine the legal effect of the will from any detached portion thereof, nor from any single phrase which it may contain. All parts of it should be considered and construed together, and if possible it should be construed in such a way as to arrive at the intention of the testator." (p. 518.)

In *Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527, it was said:

"It is a general rule that a will should be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the general purpose of the testator as gathered from the entire instrument." (p. 443.)

In *Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950, considerable stress was laid on the methods employed in punctuating and paragraphing the words of a will, and it led to the remark:

"We think, however, the general rule is that the arrangement of the terms is not regarded as controlling, although it is often considered as a circumstance by courts in attempting to determine the intent of the testator. . . . Technical rules of construction ought never to be resorted to where their application defeats the manifest intention of the testator." (p. 904.)

It is true that a part of the testator's property was not disposed of by the will, and that there is a presumption that a testator intends to dispose of his entire estate unless a contrary purpose clearly appears. (40 Cyc. 1409.) That presumption, however, is overcome in this instance by plain and unambiguous language which clearly evinces an intention that only a life estate in the property in question was intended to be given to the wife, and it follows that his purpose was to allow the estate not included in the devise to descend to his heirs in the manner provided by law.

The judgment is affirmed.