[No. 21006.   Department One.   February 10, 1928.]

*In the Matter of the Estate of* Arthur E. Ziegner, *Deceased.*

Tyrone Rice, *Appellant,* v. Bank of California *et al., Respondents.*[1]

[1] Statutes (83)—Wills (22-1)—Retrospective Acts—Revocation of Will—By Divorce. Rem. Comp. Stat., § 1399, providing that a divorce subsequent to the making of a will shall revoke the will as to the divorced spouse, is retroactive and operates to revoke a will executed before the above act went into effect, in view of the ambulatory nature of wills and that there is no vested interest in a will so long as the maker is alive.

[2] Wills (22-1)—Revocation—By Divorce. The fact that a divorce was granted to a wife who was beneficiary in her husband's will does not affect the revocation of the will by the divorce, in view of Rem. Comp. Stat., § 990, directing that a divorce shall cause a complete dissolution of the marriage as to both parties.

Appeal from an order of the superior court for Pierce county, Hodge, J., entered October 1, 1927, dismissing an action for the probate of a will.   Affirmed.

*F. C. Kapp,* for appellant.

*Robert B. Abel, G. W. H. Davis,* and *W. F. Van Ruff,* for respondents.

Tolman, J.—Appellant, by her amended petition, alleges that she and the deceased, Arthur E. Ziegner, intermarried on August 29, 1910, and remained husband and wife until October, 1916, when, upon her application, the marriage was dissolved by divorce. On September 19, 1912, while they were still husband and wife and living together as such, the deceased made a will which, if there were no children born of

[1]Reported in 264 Pac. 12.

the marriage, made the wife the sole beneficiary, and named her as sole executrix. No children were born of the marriage. The deceased died in April, 1927, leaving an estate of the value of some $10,000 to $15,-000, consisting of personalty; and, on the supposition that he died intestate, the Bank of California was duly appointed administrator of his estate on May 11, 1927.

The petition alleges that such appointment was improvidently made, under an erroneous showing that the deceased died intestate, and prays for the revocation of the letters of administration thus granted, the admission of the will to probate and the appointment of petitioner as executrix, in accordance with the terms of the will. Respondents demurred to the amended petition on the ground that it did not state facts sufficient to constitute legal cause for the revocation of the letters formerly granted, or for the appointment of the petitioner as executrix, and at the same time moved to strike from the petition certain allegations as to petitioner's rights under the will, upon the ground that the will was null and void as to her. The demurrer was sustained and the motion to strike granted, upon the theory that, under Rem. Comp. Stat., § 1399 [P. C. § 10026], the will had been revoked by the divorce. Petitioner not choosing to amend, but standing upon her petition, judgment of dismissal was entered against her, and she has appealed.

[1] It will thus be seen that there is here presented only the one issue of law, as to the effect of a statute enacted after the divorce was granted upon a will executed before the divorce decree. There is no claim that the petition is insufficient in any other respect, and both sides seem to desire only that we pass upon the one question of the effect of the statute.

The statute is embodied in the probate code of 1917, and the provision which is here to be construed was not theretofore a part of our statute law. It reads:

"A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse." Laws of 1917, p. 650; Rem. Comp. Stat., § 1399.

It must be borne in mind that nothing is involved here as to the formalities of execution, attestation, or the qualifications of the witnesses, and the like, upon which the courts have so greatly differed as to whether the law in effect at the time of the execution or at the time of the death should govern. The statute in question strikes at the very substance of the will, and in this case at the whole of the substance, and what we may now say is limited accordingly.

Appellant contends, first, that, in the absence of a statute so providing, a divorce does not revoke a former will in favor of the wife, and that, therefore, this will was a valid one in all its provisions at, and after, the time the divorce was granted; and, second, that the amendatory provision of the act of 1917, which we have quoted above, was not retroactive so as to invalidate the will, which was at all times valid prior to the enactment of the statute.

It may be admitted that the words of the statute are not such as to indicate an intent that it shall be retroactive, and that, usually, a statute will not be held to be retroactive, unless that clearly appears to be the legislative intent. Nor do we now take issue with the appellant on the first contention, as a brief and general statement of the law.

Perhaps the controversy can be more clearly elucidated by considering the nature of a will and the time it takes effect as such.

In *Strand v. Stewart*, 51 Wash. 685, 99 Pac. 1027, the court was considering a matter of procedure and

might safely have rested its opinion upon the admitted rule that procedural matters may be changed at the will of the legislature, and that vested interests may not complain, because no one has a vested right or interest in any particular form of procedure. But the court, clearly recognizing the difference between the two questions, went beyond the matter of mere procedure and held that no one could have a vested interest in or under a will, so long as its maker lived, and that both he and the state had the power to destroy that will up to the time of his death. The court there said:

"In the first place, the provision for notice to creditors and barring all claims not presented within the year, relates to a mere matter of procedure, and is not obnoxious to any provision of the constitution of the United States or of this state, whether the provision be made applicable to estates already in process of administration or to estates to be administered upon in the future. In the second place, the act of 1897 took effect long before the death of the testator, and as to his estate the act does not divest or interfere with vested rights. The right to make a testamentary disposition of property is neither a natural nor a constitutional right. Such right is derived from and rests in positive law. A will is said to be ambulatory until the death of the testator, and until that event occurs the testamentary disposition is subject to the will of the testator, and likewise to the will of the state as expressed in its public laws. The will speaks as of the date of the testator's death, and must conform to the laws in force at that time. These rules are elementary and need no citation of authority in their support. While the legislature may not interfere with or divest estates which have already become vested through the death of the testator, its power over wills, the manner of their execution, and the mode of carrying out their provisions, is absolute and supreme until death occurs. It is manifest, therefore, that the legislature could extend the provisions of the act of 1897 to wills already executed, in so far as the requirement of notice to

creditors and the barring of claims is concerned; and it is equally manifest that the legislature intended so to do."

With this decision standing as the law of the state, the legislature acted in 1917 as we have seen. It had no occasion to make the statute retroactive in terms, because all wills are ambulatory in their nature, taking effect only upon the death of the testator and subject to the legislative will at all times prior thereto. Hence, the statute has reference to all wills offered for probate after its enactment, without reference to when they may have been executed, and those executed prior to the enactment of the statute are in the same position as those executed afterward. Nor does the time of the divorce have any material bearing, save only that the divorce must be after the execution of the will and before the death of the testator.

The doctrine of the *Strand* case, *supra,* was expressly approved and applied in *In re Nichols' Estate,* 102 Wash. 303, 172 Pac. 1146, L. R. A. 1918E 986, and without question the court acted deliberately, knew the effect of the position which it took, and did so in reliance upon what may be called the weight of modern authority. There are courts holding to a contrary effect. Especially may such authorities be found among the earlier decisions, where, perhaps, the ambulatory nature of wills was lost sight of. The authorities upon which appellant relies, and they are many and from courts of high standing, are concerned with the intentions or supposed intentions of the testator only, and do not consider the absolute and paramount right of the state to step in and impose such limitations on the right to transmit by will as it may see fit. From the standpoint of the testator alone, their logic seems unanswerable, but, when the rights of the state are considered, the whole argument falls.

In the light of our earlier decisions, we do not attempt to cite all the authorities bearing upon this question, but among those which support the position taken in the *Strand* case are the following: 28 R. C. L. 283; *In re Gaffken's Will,* 197 App. Div. 257, 188 N. Y. Supp. 852; *Hayes v. Martz,* 173 Ind. 279, 89 N. E. 303, 90 N. E. 309; *Coleman v. O'Leary's Executors,* 114 Ky. 388, 70 S. W. 1068; *Hertz v. Abrahams,* 110 Ga. 707, 36 S. E. 409; *Wilson v. Greer,* 50 Okl. 387, 151 Pac. 629; *In re Berger's Estate,* 198 Cal. 103, 243 Pac. 862; *In re Kopmeier,* 113 Wis. 233, 89 N. W. 134.

[2] Something is said by way of argument to the effect that the petitioner, having applied for and obtained the divorce, is the innocent party, and that the statute should be construed as applying only to the spouse whose fault occasioned the divorce. In the light of our statute (Rem. Comp. Stat., § 990) [P. C. § 7509], which directs that a judgment of divorce shall cause a complete dissolution of the marriage as to both parties, we think the legislature, if it had any such distinction in mind, would have made its meaning plain.

The judgment appealed from is affirmed.

MACKINTOSH, C. J., PARKER, MITCHELL, and FRENCH, JJ., concur.